UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

UNITED STATES OF AMERICA,

        Plaintiff,

   v.

UNION PACIFIC RAILROAD COMPANY,

        Defendant.

NO. CIV S-06-1740 FCD/KJM

MEMORANDUM AND ORDER

----oo0oo----

    This matter is before the court on defendant Union Pacific Railroad Company's ("UP") motion for reconsideration of the court's February 13, 2008 memorandum and order (the "Order") on the parties' cross-motions for partial summary judgment on damages issues.[1] The parties' motions asked the court to adjudicate legal issues regarding the proper measures of alleged natural resource damages in this action and to issue specific

---

[1] Because oral argument will not be of material assistance, the court orders this matter submitted on the briefs. E.D. Cal. L.R. 78-230(h).

orders defining the application of those measures. (Order at 2-3 [describing the six key questions presented by the parties' motions].) The court made a variety of findings on these issues, many of which are not at issue on this motion. In summary, the court concluded, with respect to all the issues presented by the motions, as follows:

> [D]iminution in market value is not the proper measure of damages in this case. Plaintiff may recover damages for its separate injuries to the trees, to the soil and pre-merchantable timber, and its loss of use of habitat and environmental services during the period of forest regrowth. Defendant will not be permitted to argue at trial that plaintiff's requested timber damages, which amount is in dispute, are inflated due to a failure to consider certain administrative costs, and it will not be permitted an offset, pursuant to its affirmative defense of failure to mitigate damages, based on the theoretical salvage value of the timber. Plaintiff's reforestation costs are recoverable, in addition to the other requested damages, and are not unreasonable or too speculative. And finally, plaintiff's habitat equivalency damages are legally permissible and separately compensable from the other requested damages.

(Order at 3:21-4:14.)

By the instant motion, UP seeks reconsideration of the following specific findings: (1) diminution in market value is not an appropriate measure of damages in this action; (2) plaintiff suffered compensable soil damage and lost "banked" saw-timber profits; and (3) UP's expert, James Fleming, is precluded from testifying that UP is entitled to an offset of plaintiff's claimed timber damages based on a theoretical post-fire salvage sale. UP also asks the court to clarify whether the Order permits recovery of timber damages as a measure of lost profits or, instead, as lost aesthetic value.

2

    UP maintains reconsideration is warranted because the court committed "clear error" in reaching these findings. UP contends: (1) the case law relied upon by the court does not preclude diminution in value as an acceptable measure of damages, and UP should be permitted to present this theory to the jury as an "alternative" measure of damages; (2) the court treated disputed facts as undisputed and improperly found, as a matter of law, that plaintiff suffered soil damage and lost "banked" saw-timber profits; and (3) by excluding Mr. Fleming's testimony, the court has improperly prevented UP from demonstrating at trial that plaintiff's timber damages are inflated. UP asserts the Order should be clarified to emphasize that plaintiff may not recover timber damages both as lost profits and as lost aesthetic value, and if lost profits is used as the theory of recovery, UP seeks a finding that California law permits recovery only for net profits, not gross sales.

    For the following reasons, the court finds no grounds to reconsider its Order, and hereby DENIES UP's motion. UP's motion reflects an apparent fundamental misunderstanding of the Order on some issues and a simple disagreement with the court on others. This does not constitute clear error by the court, providing grounds to reconsider.

**STANDARD**

    An order that resolves fewer than all of the claims among the parties "is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." Fed. R. Civ. P. 54(b); E.D. Cal. L.R. 78-230(k) (authorizing motions for reconsideration of

3

"any motion [that] has been granted or denied in whole or in part"). Where reconsideration of a non-final order is sought, the court has "inherent jurisdiction to modify, alter or revoke it." United States v. Martin, 226 F.3d 1042, 1048-49 (9th Cir. 2000). Generally stated, reconsideration is appropriate where there has been an intervening change in controlling law, new evidence has become available, or it is necessary to correct clear error or prevent manifest injustice. See Sch. Dist. No. 1J Multnomah County, Oregon v. ACANDS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993).

In the absence of new evidence or a change in the law, which is the case here, a party may not use a motion for reconsideration to present new arguments or claims not raised in the summary judgment motion. See 389 Orange Street Partners v. Arnold, 179 F.3d 656, 665 (9th Cir. 1999). Motions to reconsider are also "not vehicles permitting the unsuccessful party to 'rehash' arguments previously presented." United States v. Navarro, 972 F. Supp. 1296, 1299 (E.D. Cal. 1997), *rev'd on other grounds*, 160 F.3d 1254 (9th Cir. 1998). Ultimately, a party seeking reconsideration must show "more than a disagreement with the Court's decision, and recapitulation of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's burden." United States v. Westlands Water Dist., 134 F. Supp. 2d 1111, 1131 (E.D. Cal. 2001).

4

**ANALYSIS**

The court addresses in turn each of UP's bases for reconsideration:

**1.  <u>Diminution in Market Value as a Measure of Damages</u>**

UP argues the court committed clear error in finding that diminution in market value is not a proper measure of damages in this case because UP did not move the court to make such a finding, and the case law relied upon by the court does not preclude UP from arguing this measure to the jury as an alternative measure of damages.  UP's argument is flatly contrary to the position it took in its motion for partial summary judgment.  There, UP argued: "the proper measure of damages is a legal issue for the court, appropriate for summary adjudication.  The court's rulings on the issue [of the appropriate measure of damages] then form the basis for appropriate jury instructions, ensuring that the trier of fact determines the amount of damages within appropriate guidelines."  (Docket #92 at 3:4-11.)  UP undeniably argued, in moving for summary judgment to limit plaintiff's natural resource damages, that diminution in market value was the *exclusive* measure of damages in this case.  (Order at 2:7-9 [posing the question presented by UP's motion as "whether diminution of market value of the subject real property (52,000 acres of National Forest Service ["NFS"] land in the Plumas and Lassen National Forests) is the proper, over-arching measure of plaintiff's natural resource damages"].)[2]

---

[2] The court noted that in arguing in favor of this measure of damages, UP asserted "that corollary rules require a
(continued...)

5

For the reasons set forth at length in the Order, the court disagreed with UP, finding that based on the unique character of the forest lands at issue, for which no real estate market value exists, diminution in value was not the appropriate measure of damages. In reaching this decision, the court applied controlling California and Ninth Circuit case law setting out the appropriate measure of damages for fire injuries to forest lands. Those cases recognize that to fully compensate the government for injury to protected forest lands, the government must be permitted to recover for its separate and identifiable injuries, including the value of the NFS timber destroyed by the fire, reforestation costs due to damage to the soil and for young growth, pre-merchantable trees destroyed by the fire and damages for loss of habitat and other loss of use of the burned NFS land during the period of regrowth. As these separate damages are recoverable, diminution in market value was not the appropriate, exclusive measure, as claimed by UP. (Order at 11-16.)

Having lost that argument, UP now changes course, arguing *the jury* must be permitted to decide whether diminution in market value is a reasonable, alternative measure of damages in this case. UP contends this court misapplied the controlling case law, which, in UP's view, allows diminution in value to be considered by the jury as one possible, appropriate measure of

---

[2](...continued)
finding that diminution in market value and cost of restoration are 'alternative' measures not additive ones, and the 'lesser of' rule limits any natural resource damages to the lesser of diminution in market value or cost of restoration." (Order at 2 n. 3.)

damages.  The court thoroughly addressed the relevant case law in its Order, and it will not repeat that analysis here.  (Order at 13-16.)  UP simply disagrees with this court's interpretation and application of the case law; such disagreement, however, is no basis for reconsideration.  <u>Westlands Water Dist.</u>, 134 F. Supp. 2d at 1131.

In its reply on this motion, UP cites, for the first time, <u>Starrh and Starrh Cotton Growers v. Aera Energy LLC</u>, 153 Cal. App. 4th 583, 588 (2007), for the proposition that a jury *must* be instructed that diminution in value may be a legitimate measure of damages where restoration costs are unreasonable.  UP did not cite <u>Starrh</u> in moving or opposing partial summary judgment.  On that basis alone, the court could properly deny reconsideration as UP provides no reason why it could not have raised the case previously.  <u>389 Orange Street Partners</u>, 179 F.3d at 665. Nonetheless, the court has considered <u>Starrh</u> and finds the case inapposite.

<u>Starrh</u> involved a continuing nuisance to land (groundwater contamination) in which damages were assessed pursuant to California Civil Code section 3334, not California Civil Code section 3333 applicable here.  Section 3334, unlike Section 3333, specifically requires that restoration costs be reasonable. Section 3334 pertains to damages for a wrongful occupation of land, including a subsurface trespass; the statute provides: "The detriment caused by the wrongful occupation of real property . . . is deemed to include the value of the use of the property for the time of that wrongful occupation, . . . the *reasonable* cost of repair or restoration of the property to its original

7

condition, and the costs, if any, of recovering the possession." Cal. Civ. Code § 3334(a) (emphasis added). Because of the express reasonableness requirement, the court in <u>Starrh</u> held the jury must be advised "what to do if [they] conclud[e] the evidence shows the proposed restoration [costs] [are] unreasonable." <u>Id.</u> at 601. In that case, the court held the jury must be instructed that diminution in market value is a "legitimate measure of damages where restoration costs are unreasonable." <u>Id.</u> at 602. <u>Starrh</u> is thus both factually and legally distinguishable.

This case involves the assessment of *tort* damages under Section 3333 for UP's negligence which caused a fire destroying approximately 52,000 acres of protected forest lands. Under the controlling California and Ninth Circuit case law, addressing specifically the appropriate measure of damages for fire injuries to forest lands, this court determined diminution in market value was not the appropriate measure of damages in this case. As previous courts have recognized in cases such as this one, the government, to be made whole, must be able to seek damages for its separate injuries to the trees, to the soil and pre-merchantable timber and its loss of use of habitat and environmental services during the period of forest regrowth. (Order at 11-16.)

### 2. Findings Regarding Soil Damage and Lost "Banked" Saw-Timber Profits

UP asserts the court committed clear error in resolving certain factual disputes as a matter of law. UP contends that in rejecting diminution in market value as an appropriate measure of

damages, the court determined, as a matter of law, that the forest experienced soil damage that will prevent natural reforestation and that the trees in the off-base and deferred areas of forest were "banked" as saw-timber and not meant to be dedicated in perpetuity for some different purpose, such as their value as wilderness for the public's enjoyment or habitat for wildlife.  UP is incorrect.

With respect to all of plaintiff's claimed damages (including timber, reforestation and habitat equivalency damages), the court found them "legally recoverable."  (See e.g. Order at 27; see also Order at 21, 29.)  It made no findings regarding the extent or amount of such damages, as those factual issues are for the jury to resolve.  (Order at 16, 21, 27, 31.) Under the court's Order, UP may challenge at trial these separate categories of plaintiff's alleged damages.  The Order only prevents UP from arguing these damages are precluded by law or that diminution in market value is the appropriate, "over-arching" measure of damages.

**3.   Preclusion of Mr. Fleming's Testimony Regarding an Offset for a Post-Fire Theoretical Salvage Sale**

UP challenges the exclusion of Mr. Fleming's testimony, arguing the court's Order precludes it from demonstrating at trial that plaintiff's requested timber damages are inflated. Contrary to UP's protestations, the court did not preclude Mr. Fleming's testimony in its entirety.  Rather, the court held:

> [UP] will not be permitted to argue at trial that plaintiff's requested timber damages, which amount is in dispute, are inflated *due* to a failure to consider certain administrative costs, and it will not be permitted an offset, pursuant to its affirmative defense of failure to

9

> mitigate damages, based on the theoretical salvage value of the timber.

(Order at 4:4-9.) (emphasis added.) Thus, UP is not precluded, generally, from introducing evidence to demonstrate plaintiff's timber damages are excessive and unreasonable. UP is only precluded from arguing that plaintiff's timber damages are inflated because of a failure to deduct administrative costs and salvage values. UP may introduce evidence of, for example, green timber values. On that issue, Mr. Fleming has offered an opinion that the green timber values are substantially less than claimed by plaintiff's experts. Accordingly, in some respects, Mr. Fleming's testimony is admissible.

UP also criticizes the court's reliance on <u>United States v. Hult</u>, 319 F.2d 47 (9th Cir. 1963) for the proposition that salvage value is a question of mitigation after actual damages have been ascertained and then only for amounts that were realized or could have been realized by the government. (Order at 23.) UP contends <u>Hult</u> is factually distinguishable because, there, the court considered the propriety of assessing a statutory double damages provision for trespass and injury to trees rather than fire damages caused by negligence. Again, UP's argument is based on a simple disagreement with the court's interpretation and application of the relevant case law. Such disagreement is not grounds for reconsideration. <u>Westlands Water Dist.</u>, 134 F. Supp. 2d at 1131.

Moreover, UP's argument misses the critical question: whether UP was entitled to an offset of plaintiff's damages based on a theoretical post-fire salvage sale. The court cited <u>Hult</u>

10

not for its analysis of the applicability of the statutory double damages provision but for its finding that the issue of salvage value is a question of mitigation of damages. On that issue, under <u>Hult</u> and <u>Roark</u> (also cited by the court for its findings on this issue), UP is entitled to an offset of damages only for those amounts plaintiff realized or could have realized. (Order at 22-23.) As set forth in the court's Order, because plaintiff could not realize a salvage value for the timber on the QLG offbase lands, since such a sale was prohibited by law, UP was not entitled to an offset of damages to these lands. (Order at 24.) UP could only claim an offset related to the non-QLG offbase lands for which plaintiff conceded it recouped a salvage value of $335,616. (<u>Id.</u>)

**4. <u>Clarification of Basis for Timber Damages</u>**

UP seeks clarification of the court's Order as to whether plaintiff is permitted to base its timber damages on a theory of lost profits or as lost aesthetic value. UP contends plaintiff may not seek damages on both theories, and if plaintiff bases its damages on a claim of lost profits, plaintiff may only recover its net profits, not gross sales. In finding plaintiff entitled to seek damages for the lost timber, as a separate and identifiable injury, the court recognized that under California law, where the restoration of the land to a "reasonable approximation of its former condition is impossible or impracticable, the landowner may recover the value of the trees or shrubbery, *either as timber or for their aesthetic qualities*, [w]ithout regard to the diminution in the value of the land." (Order at 20, citing <u>Hassoldt v. Patrick Media Group, Inc.</u>, 84

11

Cal. App. 4th 153, 168 (2000).) (Emphasis in original.)  The court cited <u>Hassoldt</u> as support for its conclusion that damages for loss of the timber on the NFS lands were legally recoverable. The court, however, made no findings with respect to the amount of those damages, nor the theory under which plaintiff could seek the damages.  As to the latter issue, the parties did not move for partial summary judgment.  Thus, the court's Order provides no limitation on the theory plaintiff may use for asserting the reasonableness of its claimed timber damages.  Like the above, UP may not argue plaintiff's timber damages are legally barred, but it can challenge the reasonableness of the amount claimed in ways not specifically precluded by the Order.[3]

**CONCLUSION**

For the foregoing reasons, the court finds no grounds to reconsider its Order granting in part and denying in part plaintiff's motion for partial summary judgment and denying, in their entirety, UP's motions for partial summary judgment (Docket #s 58, 59, 68 and 70), and accordingly, UP's instant motion for reconsideration is DENIED.

IT IS SO ORDERED.

DATED: April 30, 2008

FRANK C. DAMRELL, Jr.
UNITED STATES DISTRICT JUDGE

---

[3] Defendant has indicated in its opposition that it will not seek timber damages as a "measure of lost profits." (Opp'n, filed Mar. 31, 2008, at 10:8.)  However, should defendant do so at trial, UP can raise at that time via a motion in limine whether California law permits recovery only for net profits, not gross sales.